Robert J. SCOTT and Jonathan
C. Scott, Plaintiffs,

v.

REAL ESTATE FINANCE GROUP, ERA
Gatewood Realty, Inc. and Ira
Simonoff, Defendants.

ERA GATEWOOD REALTY, INC.
and Ira Simonoff, Third
Party Plaintiffs,

v.

AA PREMIER REALTY, LTD., d/b/a Remax Premier Realtors and Rose Petrokiewicz, Third Party Defendants.

REAL ESTATE FINANCE GROUP,
Third Party Plaintiff,

v.

REMAX PREMIER REALTORS,
INC. and Rose Petrokiewicz,
Third Party Defendants.

No. CV 95–2116 (ADS).

United States District Court,
E.D. New York.

Feb. 26, 1997.

Burton, Scott & Associates, P.C. by Bernard L. Burton, Melville, NY, for Plaintiffs.

Michael D. Solomon by Thomas Keating, Levittown, NY, for Defendant Real Estate Finance Group.

Mendes & Mount by Joseph Deliso, New York City, for Defendants–Third Party

Plaintiffs ERA Gatewood Realty Corp. and Ira Simonoff.

Ahmuty, Demers & McManus by Janice Berkowitz, Albertson, NY, for Third Party Defendants AA Premier Realty, Ltd. d/b/a REMAX Premier Realtors and Rose Petrokiewicz.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge:

This case presents the Court with an opportunity to answer a practical question: can a real estate agent representing a landlord obtain the credit report of a prospective tenant without his approval?

Because the transaction underlying the case involves so many parties, the Court identifies them at the outset:

1. The plaintiffs: Robert J. Scott and Jonathan C. Scott, are two brothers seeking to rent a house in Old Bethpage, New York (the "plaintiffs" or the "Scotts");

2. Real Estate Finance Group: a mortgage brokering entity that ran the credit check on the plaintiffs at the request of Simonoff ("REFG");

3. ERA Gatewood Realty, Inc.: The brokerage agency representing the landlord ("ERA Gatewood");

4. Ira Simonoff: The ERA Gatewood agent involved in this transaction ("Simonoff");

5. AA Premier Realty, Ltd. d/b/a Remax Premier Realtors, the real estate agency acting on behalf of the plaintiffs in their search for a house ("Remax"); and

6. Rose Petrokiewicz, the agent employed by Remax participating in this transaction ("Petrokiewicz").

This action arises from the Scotts' against REFG, ERA Gatewood and Simonoff (collectively the "defendants"), based on their alleged violation the plaintiff's rights under the federal and New York Fair Credit Reporting Acts. *See* 15 U.S.C. §§ 1681 et seq. ("FCRA"); N.Y. Gen. Bus. L. §§ 380 et seq. ("NYFCRA"). According to the plaintiffs, the defendants unlawfully performed a credit check in connection with their potential lease of a house without giving them proper notice and without their consent.

The defendants all deny any liability in this matter. Nevertheless, to the extent that they are found liable, they have filed cross claims against each other and two third party complaints against Petrokiewicz and Remax for contribution and or indemnification. Presently before the Court are the plaintiffs' motion for partial summary judgment as to liability and the defendants' cross motions for summary judgment pursuant to Fed.R.Civ.P. 56. The defendants ERA Gatewood and Simonoff also move for sanctions pursuant to Fed.R.Civ.P. 11 arguing that the plaintiffs' claims against then are frivolous.

## I. *Background*

The plaintiffs are residents of Nassau County. REFG is a New York corporation owned by Peter Visconti ("Visconti") and engaged in the business of mortgage brokering, with its principal place of business in Jericho, New York. As part of its operations, REFG obtains credit reports regarding individuals participating in real estate transactions. Toward this end, REFG has entered into a contract with Factual Data Group, a credit reporting agency, to provide these credit reports. This agreement states that all information supplied is furnished in compliance with the federal Fair Credit Reporting Act and that any "[i]nformation is for the exclusive use of [REFG] and is to be held in strict confidence." Declaration of Bernard L. Burton, May 17, 1996 ("Burton Dec."), Exh. G. Ira Simonoff is a real estate agent for ERA Gatewood Realty, Inc., a New York corporation with its principal place of business in Syosset, New York.

In April 1995, the plaintiffs contacted third party defendant Rose Petrokiewicz, a real estate broker and employee of Remax, located in Bethpage, New York, in order to find a house to rent. In their supporting "declarations" however, the plaintiffs deny that Petrokiewicz was their agent. *See* Declarations of Robert J. Scott and Jonathan C. Scott, February 27, 1996 ¶ 4. In any event, Petrokiewicz found one potential house located in Old Bethpage, New York using a computer listing service. The landlords live in Japan.

Simonoff at ERA Gatewood was designated as the selling agent. According to the computer listing, a copy of which is provided by the defendants, "references and [a] credit check [were] a must" for any applicant. Affirmation of Joseph A. Deliso, June 14, 1996 ("Deliso Aff.") ¶ 6, Exh. F.

On April 8, 1995, Petrokiewicz contacted Simonoff who agreed to show the Scotts the house that night. After viewing the house, the plaintiffs made an offer of either $1,600 or $1,850 per month and discussed related issues including a security deposit, restrictions on pets and smoking. Deliso Aff., Exh. B., Deposition of Ronald Scott, March 13, 1996 at 47–48. According to the plaintiffs, at this time Simonoff advised them that the owners "might want to obtain a credit report before renting the house. . . ." Burton Dec., Exh. F., Declaration of Rose Petrokiewicz ¶ 6. In response, the Scotts advised Simonoff "that he was no authorized to obtain their credit reports and he agreed that he would not obtain such information." *Id.*

The Scotts further claim that the next day, April 9, 1995, Simonoff contacted Visconti at REFG and had him run a "credit check" on them. The plaintiffs emphasize, and REFG admits, that they had "no relationship whatsoever" with Visconti or REFG, never provided any written authorization for the credit check and were never given notice that the check would be performed. Sometime thereafter, the Scotts learned about the credit reports and contacted Simonoff who sent them copies upon their request. Deliso Aff., Exh. B. at 65–66.

The plaintiffs commenced this action by filing their complaint on March 24, 1995 alleging two causes of action for: (1) obtaining consumer reports under "false pretenses" in violation of federal and state law; and (2) failing to provide adequate notice of efforts to obtain consumer reports under state law. REFG filed its answer on July 24, 1995 denying all material allegations contained in the complaint and cross claiming for indemnification against Simonoff and ERA Gatewood. Simonoff and ERA Gatewood filed their answer on August 15, 1995 and alleged a similar cross claim for contribution and or indemnification against REFG.

On January 4, 1996, defendants Simonoff and ERA Gatewood filed a third party complaint against Petrokiewicz and Remax. According to the third party plaintiffs, Petrokiewicz, in her capacity as an agent, had a duty to convey the contents of the computer listing, including the credit check requirement to any perspective purchasers. Further, ERA Gatewood and Simonoff allege that they "were entitled to rely upon the fact that any information provided to the third-party defendants as plaintiffs' agents would be communicated to the plaintiffs." ERA Gatewood–Simonoff Third Party Compl. ¶ 20. As a result, ERA Gatewood and Simonoff claim that when they obtained the credit reports, they were acting with the consent of the plaintiffs' agents, the third party defendants. Accordingly, to the extent that ERA Gatewood and Simonoff are found liable for violating the federal and state Fair Credit Reporting Acts, they are entitled to contribution and or indemnification from the third party defendants.

Similarly, on January 10, 1996, defendant REFG filed its own third party complaint against Petrokiewicz and Remax. According to REFG, when defendant Ira Simonoff requested the credit check on the plaintiffs, Simonoff stated "that he was authorized by the Third–Party Defendants Remax by its real estate sales agent Rose Petrokiewicz to obtain credit reports of the Plaintiffs as a prerequisite to determine their eligibility to rent said rental property." REFG Third Party Compl. ¶ 11. Based on this apparent authority, REFG maintains that if it is found liable to the plaintiffs for damages, it should be entitled to contribution and or indemnification from the third party defendants.

On or about January 26, 1996, the third party defendants filed answers to both third party complaints and submitted cross claims against Simonoff, ERA Gatewood and REFG seeking indemnification. On February 21, 1996, ERA Gatewood and Simonoff filed their answer to these third party cross claims denying all material allegations contained therein.

As stated above, presently before the Court are the plaintiffs' motion for partial

summary judgment as to liability and two cross motions for summary judgment, one filed by defendant REFG and the other by defendants ERA Gatewood and Ira Simonoff. ERA Gatewood and Simonoff also move for sanctions against the plaintiffs pursuant to Fed.R.Civ.P. 11 arguing that the claims against them are frivolous. There are no pending motions with respect to the third party actions at this time.

## II. *Discussion*

### A. *Summary judgment standard*

A court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir. 1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *West–Fair Elec. Contractors v. Aetna Cas. & Surety Co.*, 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510; *see Vann v. New York City*, 72 F.3d 1040 (2d Cir.1995).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir. 1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 128 (2d Cir.1996); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Servs., Ltd., Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994).

It is within this framework that the Court addresses the grounds for the present motion for summary judgment.

### B. *The Fair Credit Reporting Act*

The plaintiffs claim that the defendants are liable under the federal and state Fair Credit Reporting Acts for obtaining credit reports under "false pretenses" and failure to provide adequate notice. *See* 15 U.S.C. § 1681q; N.Y. Gen. Bus. L. §§ 380–b, 380–o. The Court will address of the allegations under the federal statute first.

#### 1. *The federal act*

The FCRA was enacted in response to the "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). With respect to users of information provided by consumer reporting agencies, section 1681q of the federal act provides:

> Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined not more than $5,000 or imprisoned not more than one year or both.

15 U.S.C. § 1681q. Civil liability will attach to any consumer reporting agency or user who willfully fails to comply with these provisions under 15 U.S.C. § 1681n which addresses "willful noncompliance." *Zamora v. Valley Federal Sav. & Loan Ass'n*, 811 F.2d

1368, 1370 (10th Cir.1987); *Kennedy v. Border City Sav. & Loan Ass'n,* 747 F.2d 367, 369 (6th Cir.1984); *Graziano v. TRW, Inc.,* 877 F.Supp. 53, 56 (D.Mass.1995).

█ Parenthetically, the Court notes that some courts have also recognized a claim pursuant to 15 U.S.C. § 1681o which provides for a private right of action for negligent noncompliance with the FCRA. *See, e.g., Hansen v. Morgan,* 582 F.2d 1214, 1219 (9th Cir.1978); *Yohay v. City of Alexandria Employees Credit Union, Inc.,* 827 F.2d 967, 971–72 (4th Cir.1987). However, because section 1681q requires that an individual act "knowingly and wilfully" in order to be found guilty of obtaining consumer information under false pretenses, this Court believes that the proper vehicle for civil liability is section 1681n and not section 1681o. *See Kennedy,* 747 F.2d at 368 n. 1; *Graziano,* 877 F.Supp. at 56 n. 5 (collecting cases).

█ In any event, the standard for determining whether a consumer report is acquired under "false pretenses" is usually defined in terms of the "permissible purposes" for obtaining those reports which are set forth at 15 U.S.C. § 1681b. *Hansen,* 582 F.2d at 1219; *Zamora,* 811 F.2d at 1370; *Graziano,* 877 F.Supp. at 57; *Allen v. Calvo,* 832 F.Supp. 301, 303 (D.Or.1993). Section 1681b defines "permissible purposes" as follows:

A consumer reporting agency may furnish a consumer report under the following circumstances and no other:

(1) In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury.

(2) In accordance with the written instructions of the consumer to whom it relates.

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer.

15 U.S.C. § 1681b. "[A] showing by [a defendant] that it had a permissible purpose under the FCRA for obtaining the report is a complete defense to the charge." *Advanced Conservation Sys., Inc. v. Long Island Lighting Co.,* 934 F.Supp. 53, 54 (E.D.N.Y. 1996); *Baker v. Bronx–Westchester Investigations, Inc.,* 850 F.Supp. 260, 263–64 (S.D.N.Y.1994). However, in order to find a violation of section 1681q, many courts require "a calculated attempt to mislead another in order to obtain information" in addition to an impermissible purpose. *Graziano,* 877 F.Supp. at 57; *see Popik v. American Int'l Mortgage Co.,* 936 F.Supp. 173, 176–77 (S.D.N.Y.1996) (violation of section 1681q requires demonstration of willful failure to disclose the impermissible purpose for obtaining the consumer report); *see also Allen,* 832 F.Supp. at 303–04. Further, "a misrepresentation is non-actionable if the FCRA would permit the requesting party to receive the credit report for an albeit unstated but permissible purpose." *Daley v. Haddonfield Lumber Inc.,* 943 F.Supp. 464, 467 (D.N.J. 1996); *see DiCarlo v. Maryland Auto. Ins. Fund,* 855 F.Supp. 823, 824 (D.Md.1994).

█ Where the consumer report is acquired by a credit agency subscriber for another party, the subscriber may still be held liable where he obtains the report under false pretenses. *Yohay,* 827 F.2d at 973; *Allen,* 832 F.Supp. at 303 (D.Or.1993); *Rylewicz v. Beaton Servs., Ltd.,* 698 F.Supp. 1391, 1400 (N.D.Ill.1988); *Boothe v. TRW*

*Credit Data,* 557 F.Supp. 66, 71 (S.D.N.Y. 1982).

### 2. *The Scotts' FCRA claim*

■ Within this general framework, the initial question is whether the defendants' conduct will support the plaintiffs' claim for violation of 15 U.S.C. §§ 1681n and 1681q for obtaining a credit report under "false pretenses." As set forth above, this determination turns upon the Court's interpretation of section 1681b which provides the permissible purposes for obtaining a "consumer report."

At the outset, the Court notes that the parties agree that the credit report constitutes a consumer report within the meaning of the act. *See* 15 U.S.C. § 1681a(d) (defining the term "consumer report"). Section 1681a(d) defines a consumer report in part as any "communication" for any purpose "authorized under section 1681b."

As set forth above, section 1681b sets forth a number of specific permissible purposes for which a consumer reporting agency may supply a consumer report, such as in connection with a credit inquiry, insurance or employment. In addition, the statute provides one general category for individuals who "ha[ve] a legitimate business need for the information in connection with a business transaction involving the consumer." 15 U.S.C. § 1681b(3)(E). It is this provision upon which the Court must focus.

The plaintiff argues that this language should be interpreted narrowly to exclude a rental of residential property. In support of their position, the Scotts rely on *Houghton v. New Jersey Mfrs. Ins. Co.,* 795 F.2d 1144 (3d Cir.1986) in which the Third Circuit held that "any § 1681b(3)(E) business transaction must relate to one of the other specifically enumerated transactions in §§ 1681a(d) and b(3), *i.e.,* credit, insurance eligibility, employment, or licensing." *Id.* at 1149. The problem with the plaintiffs' position however, is that in *Houghton,* the court was considering whether the report at issue was a consumer report pursuant to 15 U.S.C. § 1681a(d), which is defined narrowly. *Ippolito v. WNS, Inc.,* 864 F.2d 440, 451 n. 11 (7th Cir.1988), *cert. denied,* 490 U.S. 1061, 109 S.Ct. 1975, 104 L.Ed.2d 623 (1989). In this case, the

Court is considering whether the defendants had a permissible purpose in obtaining the report for a "false pretenses" analysis, a broader interpretation. *See id; see also Advanced Conservation Sys.,* 934 F.Supp. at 54–55 (finding a permissible purpose under section 1681b(3)(E) for a transaction not specifically set forth in the remaining provisions of section 1681b). Accordingly, the Court will look beyond the more specific provisions of section 1681b to determine whether the defendants had a "legitimate business need for the information in connection with a business transaction involving the consumer."

■ In this regard, the Court finds the Federal Trade Commission's Statements of General Policy or Interpretations persuasive. *See* Subchapter F—Statements of General Policy or Interpretations Under the Fair Credit Reporting Act ("Policy Statements"), 16 C.F.R. Part 600, App. Although these provisions do not constitute "trade regulation rules or regulations," *see* 16 C.F.R. § 600.2(a), courts have relied on them for authority in rendering decisions on dispositive motions turning on interpretation of section 1681b. *See, e.g., Baker,* 850 F.Supp. at 262–63 (granting defendants' motion for summary judgment based in part on Statements of General Policy and Interpretations).

According to the Policy Statements, the term "legitimate business need," as that term is applied in section 1681b(3)(E) includes obtaining a "consumer report ... on a consumer who applies to rent an apartment...." 16 C.F.R. Part 600 at 385. These provisions apply to real estate agents who "obtain[ ] consumer reports to assist owners of residential properties in screening consumers as tenants...." *Id.* at 386.

Applying these standards, the Court finds that the defendants ERA Gatewood and Simonoff had a permissible purpose in obtaining credit reports on the plaintiffs based on the prospective lease. ERA Gatewood and Simonoff, acting as a real estate agent, were charged with finding tenants to rent the house. The owners were living in Japan. As part of their criteria for entering the lease, the landlords wanted a credit check run on any prospective tenant. This prerequisite

was contained in the computer listing ultimately used by the third party defendant Rose Petrokiewicz in locating a potential residence for the plaintiffs. Further, Simonoff advised the Scotts when they came to view the house that a credit check would be necessary. This was during the same meeting where the plaintiffs admitted making an offer of either $1,600 or $1,850 per month in rent and discussing other details including a security deposit, restrictions on pets and smoking. In the Court's view, this conversation was sufficient to constitute a "business transaction" under section 1681b(3)(E) and give rise to a "legitimate business need" to obtain a credit report. *See Anderson v. Ray Brandt Nissan, Inc.,* Civ. A. No. 91–1162, 1991 WL 211627, *2 (E.D.La. Oct.8, 1991) (finding that parties' discussions regarding the leasing or purchase of a car, including potential payments and plaintiff's income gave rise a business transaction sufficient to constitute a legitimate business need to obtain a consumer report). Accordingly, the Court finds that the defendants ERA and Simonoff did not employ false pretenses as a matter of law and their motion for summary judgment pursuant to Fed.R.Civ.P. 56 is granted with respect to the plaintiffs' federal claim, and the Scotts' motion for partial summary judgment as to liability against ERA Gatewood and Simonoff on this claim is denied.

■ In reaching this conclusion the Court notes the plaintiffs' argument that it is entitled to prevail because the defendants did not have authorization to run the credit check. This argument has already been rejected by the District Court for the Southern District of New York, and is now rejected by this Court as well. *See Baker,* 850 F.Supp. at 264. According to the *Baker* court, where the defendants had a permissible purpose in obtaining the credit report, the fact that the defendant either misrepresented that it had the plaintiff's permission to obtain the report, or simply had no authorization at all, is immaterial. *Id.* The FTC Policy Statement reaches the same conclusion. *See* Policy Statement, 16 C.F.R. Part 600 at 386 ("When permissible purposes exist, parties may obtain and consumer reporting agencies may furnish, consumer reports without the con-

sumers' permission or over their objection"). Accordingly, the Court finds that because ERA Gatewood and Simonoff had a permissible purpose, even if the plaintiffs did not grant authorization for the defendants to run the credit check, the request was appropriate.

■ Similarly, the Court rejects the plaintiffs' argument that they were entitled to notice that the consumer report was sought and obtained. Notice requirements under the act are defined pursuant to 15 U.S.C. §§ 1681d, 1681m. As the district court in *Galligan v. Commonwealth Mortgage Assurance Co.,* CIV. A. 93–3129, 1994 WL 263351, at *3 (E.D.Pa. June 14, 1994) aptly summarized "[r]ecipients or users of information obtained from a consumer reporting agency have no duty to notify, or disclose any information to the consumer unless adverse action pertaining to credit, insurance, or employment is taken." A similar provision is made for procurement of investigative consumer reports. *Letscher v. Swiss Bank Corp.,* 94 Civ. 8277(LBS), 1996 WL 183019, at *3 (S.D.N.Y. Apr.16, 1996), citing, 15 U.S.C. § 1681d, 1681m. Because the circumstances at issue in this case do not fall under these limited provisions, the Scotts are unable to maintain a federal cause of action based on inadequate notice.

■ The plaintiffs' claim against REFG however, is complicated by the fact that REFG admits that is had no relationship of any kind with the plaintiffs. REFG Mem. of law at 4–5 ("Real Estate Finance [REFG] had no pending business transactions with the Plaintiffs, nor had [REFG] ever spoken to or communicated with the Plaintiffs at any time.... [REFG] and the Plaintiffs did not, in fact, have a consumer relationship ... regarding a specific business transaction between them ..."). "[T]he absence of a consumer relationship between the requesting party and the subject of the credit report requires the court to find that the requesting party did not have a permissible purpose to obtain the report." *Daley,* 943 F.Supp. at 468; *see also Houghton,* 795 F.2d at 1149; *Boothe,* 557 F.Supp. at 70; *see Greenway v. Information Dynamics, Ltd.,* 399 F.Supp.

1092, 1096 (D.Ariz.1974), *aff'd*, 524 F.2d 1145 (9th Cir.1975), *cert. denied*, 424 U.S. 936, 96 S.Ct. 1153, 47 L.Ed.2d 344 (1976). Indeed, the "Client Information Form/Agreement" signed by Visconti on behalf of REFG recognizes that the "[i]nformation [provided] is for the exclusive use of Client [REFG] and is to be held in strict confidence." Burton Dec., Exh. G. Accordingly, because the plaintiffs had no relationship with REFG, Visconti had no permissible purpose in obtaining the credit reports and his conduct constitutes a violation of 1681q, as a matter of law. As a result, the Scotts' motion for summary judgment as to liability for obtaining consumer reports under false pretenses pursuant to the FCRA against the defendant REFG is granted, and REFG's motion for summary judgment with respect to this claim is denied.

■ In reaching this conclusion the court rejects REFG's argument that it was not a "user" of the consumer reports as that term is applied in section 1681q. As set forth above, "[t]he term 'user' refers not only to the ultimate destination of a credit report but also encompasses the person who acquires it for another." *Boothe*, 557 F.Supp. at 71, citing, *Hansen*, 582 F.2d at 1216. Accordingly, REFG's role in obtaining the credit report is sufficient to find that his conduct is governed by the FCRA.

### 3. *The New York statute*

The plaintiffs also allege a related false pretenses claim pursuant to the NYFCRA, N.Y. Gen. Bus. L. §§ 380 et seq. as part of the first cause of action. Similar to the federal act, the New York statute provides for criminal penalties against "any person who knowingly and wilfully obtains information concerning a consumer from a consumer reporting agency under false pretenses...." N.Y. Gen. Bus. L. § 380–*o*. Civil liability for wilful noncompliance arises under section 380–*l*. N.Y. Gen. Bus. L. § 380–*l*. The permissible purposes for obtaining a credit report are set forth in section 380–b, which permits supplying such information both: "to a person in connection with a business transaction involving the consumer where the user has a legitimate business need for such information" and "in connection with the rental or lease of an apartment." N.Y. Gen. Bus. L. § 380–b(a)(3). In general, courts have interpreted the federal and New York statutes similarly. *See Baker*, 850 F.Supp. at 263 (giving similar treatment to parallel provisions of the two statutes); *Klapper v. Edwin S. Shapiro, TRW, Inc.*, 154 Misc.2d 459, 586 N.Y.S.2d 846, 850–51 (Sup.Ct.N.Y.Cty.1992) (same).

■ Applying these parallel provisions of the NYFCRA, the Court reaches the same conclusions as are set forth above with respect to the Scotts' federal false pretenses claim. In the Court's view, ERA Gatewood and Simonoff had a permissible purpose in seeking credit reports regarding the plaintiffs in connection with their application to lease the house in Old Bethpage. If anything, the defendants arguments are stronger under the state statute because of the provision regarding the rental of residential property incorporated in that statute. Although the Scotts argue that the negotiations between the parties were not sufficiently ripe to give rise to the type of business transaction that would entitle the defendants to seek a credit report, the Court disagrees. The plaintiffs made an offer on the lease and discussed such details as pets and smoking. Based on these events, the finds that ERA Gatewood and Simonoff had a permissible purpose to seek the credit report under General Business Law sections 380–b and 380–*o*.

■ With respect to the Scotts' state law claims against REFG, the Court again reaches the same conclusions. Given the similarity in the provisions of the federal and state statutes the Court finds that REFG had no permissible purpose in procuring the credit report regarding the Scotts because it had no consumer relationship with them.

Although the analysis of the provisions addressing false pretenses under the federal and state statutes are similar, the Court notes that the plaintiffs allege a second cause of action under the New York statute for failure to comply with certain notice provisions. These notice requirements are set forth in section 380–b(b) which provides:

> No person shall request a consumer report, other than an investigative consumer

report, in connection with an application made after the effective date of this article, for credit, employment, insurance, or rental or lease of residences, unless the applicant is first informed in writing or in the same manner in which the application is made that (i) a consumer report may be requested in connection with such application, and (ii) the applicant upon request will be informed whether or not a consumer report was requested, and if such report was requested, informed of the name and address of the consumer reporting agency that furnished the report.

N.Y. Gen. Bus. L. § 380–b(b).

■ The plaintiffs read this language to prohibit procurement of a credit report "unless the consumer is notified in writing or in the application itself that a consumer report may be requested and also that the report is requested." Pl. Mem. of Law at 16 (emphasis in original). In the Court's view, the Scotts read section 380–b(b) too narrowly. The statute provides that the lease applicant must be informed in writing of a request for a consumer report

> *or* in the same manner in which the application is made that (i) a consumer report may be requested in connection with such application, and (ii) the applicant upon request will be informed whether or not a consumer report was requested, and if such report was requested, informed of the name and address of the consumer reporting agency that furnished the report.

N.Y. Gen. Bus. L. § 380b(b) (emphasis supplied).

The uncontroverted facts demonstrate that the defendants have satisfied these alternative requirements. On April 9, 1995, the plaintiffs were shown the house by Simonoff. At that time they admit to making an offer and discussing various details of the lease. None of this was done in writing. *See* Deliso Aff., Exh. B. at 47–48 (addressing the "conversation" during which these topics were discussed). Given that the application was made verbally, it was entirely proper that Simonoff advised the Scotts orally that a credit check might be done. The plaintiffs concede that oral notice was given. *See* Pl. Mem of Law at 18. Further, the computer

listing which served as the basis for the Scotts' inquiry about the house clearly states that a "references and [a] credit check [were] a must." Deliso Aff., Exh. F. In the Court's view this notice is sufficient under the statute.

■ With respect to the second prong of section 380–b(b), the plaintiffs' admit that at their request, Simonoff faxed them a copy of the credit report. Deliso Aff., Exh. B at 66. This transmission of the credit report satisfies the remaining requirements of section 380–b(b).

■ Further, the Court finds that the language contained in the statute does not require notice from everyone involved in obtaining the consumer report. Accordingly, the notice from Simonoff is sufficient to absolve REFG as well.

Having determined that the plaintiffs have failed to establish a claim based on inadequate notice under section 380–b(b), the Court may now decide the parties' motions with respect to the state law claims. As stated above, false pretenses claims under the NYFCRA are to be reviewed under the same standards applied under federal statute. Accordingly, for the reasons set forth above in the Court's FCRA analysis, the motion of ERA Gatewood for summary judgment with respect to the plaintiffs' state law false pretenses claim is granted, and the Scott's related motion for partial summary judgment as to liability on this claim is denied. In like manner, REFG's motion for summary judgment with respect to the plaintiff's NYFCRA false pretenses claim is denied and the Scotts' motion for partial summary judgment as to liability against REFG is granted. With respect to the second cause of action alleging failure to give adequate notice under N.Y. Gen. Bus. L. § 380–b(b), both motions by the defendants are granted and Scotts' motion for partial summary judgment as to this claim is denied.

### 4. *Sanctions*

■ Finally, the Court notes that defendants ERA Gatewood and Simonoff include in their summary judgment motion a motion for sanctions against the plaintiff pur-

suant to Fed.R.Civ.P. 11. Rule 11, which provides for the award of sanctions, was amended in 1993. Under the amended Rule 11, sanctions may be awarded for violations of subsection (b), which provides in relevant part,

> *Representations to Court.* By presenting to the court (whether by signing, filing, submitting, or advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted under existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]
>
>     \*     \*     \*     \*     \*     \*

Fed.R.Civ.P. 11(b). Motions for sanctions under Rule 11 must "be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection (b)." Fed.R.Civ.P. 11(c)(1)(A); *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1328 (2d Cir.1995). A request for Rule 11 sanctions should not be included merely as an additional claim for relief, Fed. R.Civ.P. 11 (Advisory Committee Notes), and an award of sanctions is discretionary and should be imposed with caution. *Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir.1994). The standard for sanctioning factual contentions under the current rule is whether there is, or will likely be, "evidentiary support" for the allegations. *Hadges,* 48 F.3d at 1328 (citing Advisory Committee note).

■ Under these revised standards the Court finds that the defendants are not enti-

tled to sanctions under Rule 11 for two reasons. First, the defendants have failed to comply with subsection (c)(1)(A) requiring that a motion for Rule 11 sanctions be made separate and apart from other motions. Therefore sanctions are precluded in this instance.

■ Second, even if the procedural requirements of Rule 11 were satisfied, the Court would decline to exercise its discretion to award sanctions in this situation. Although the Court agrees that defendants ERA Gatewood and Simonoff were entitled to summary judgment, there is little case law addressing the FCRA and almost none in this circuit. There are even fewer cases interpreting the NYFCRA. Accordingly, the Court finds that the plaintiffs' claims were reasonably made under the circumstances, and the motion for Rule 11 sanctions is denied.

## III. *Conclusion*

Having reviewed the parties' submissions, as well as the Court file, it is hereby

ORDERED, that motion of the defendants ERA Gatewood and Simonoff for summary judgment pursuant to Fed.R.Civ.P. 56, with respect to all of the plaintiffs' claims as to them is granted, and the plaintiffs' motion for partial summary judgment as to liability against defendants' ERA Gatewood and Simonoff is denied; it is further

ORDERED, that the motion of the defendant REFG for summary judgment with respect to the false pretenses claims under the FCRA and NYFCRA contained in the first cause of action is denied and the plaintiffs' motion for partial summary judgment as to liability against defendant REFG on this cause of action is granted; it is further

ORDERED that REFG's motion for summary judgment with respect to the second cause of action for failure to comply with the notice standards set forth in N.Y. Gen. Bus. L. § 380–b(b) is granted and the plaintiffs' motion for summary judgment with respect to this cause of action is denied; and it is further

ORDERED, that the motion of defendants ERA Gatewood and Simonoff for sanctions pursuant to Fed.R.Civ.P. 11 is denied.

SO ORDERED.