183 F.3d 97 (2nd Cir. 1999)
 ROBERT J. SCOTT and JONATHAN C. SCOTT, Plaintiffs-Appellants,
v.
REAL ESTATE FINANCE GROUP, Defendant,
ERA GATEWOOD REALTY, INC. and IRA SIMONOFF, Defendants-Cross-Claimants-Third- Party Plaintiffs-Appellees,
AA PREMIER REALTY, LTD., doing business as Remax Premier Realtors and Rose Petrokiewicz, REMAX PREMIER REALTORS, INC. and ROSE PETROKIEWICZ, Third Party-Defendants.
 Docket No. 98-7935
August Term, 1998
 UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
 Argued: March 26, 1999
Decided: July 09, 1999
 
 Appeal from order of the United States District Court for the Eastern District of New York (Spatt, J.) that granted partial summary judgment dismissing plaintiffs' claims against certain defendants and denied plaintiffs' request for partial summary judgment.
 Affirmed in part, reversed and remanded in part.
 JONATHAN C. SCOTT, pro se, (Bernard L. Burton, Melville, N.Y., on the brief) for Appellants.
 JOSEPH A. DELISO, New York, N.Y., for Defendants-Appellees.
 Before: FEINBERG, PARKER, and POOLER, Circuit Judges.
 POOLER, Circuit Judge:
 
 
 1
 Jonathan and Robert Scott, who are brothers, sued several defendants including ERA Gatewood Realty, Inc. ("Gatewood") and broker Ira Simonoff, alleging that the defendants violated the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, 1681a-1681u, as well as New York's Fair Credit Reporting Act ("NYFCRA"), N.Y. Gen. Bus. L. §§ 380, 380-a-380-s. The Scotts claimed that Gatewood and Simonoff obtained and used their credit reports without proper notice or authorization and by means of false pretenses. The United States District Court for the Eastern District of New York (Spatt, J.) granted summary judgment in favor of Gatewood and Simonoff and denied plaintiffs' motion for summary judgment. See Scott v. Real Estate Finance Group, 956 F. Supp. 375, 386 (E.D.N.Y. 1997). We affirm in part and reverse in part.
 
 BACKGROUND
 
 2
 In April 1995, the Scotts looked at a house that Gatewood had listed for rental. Simonoff, a Gatewood broker, showed the house, and Rose Petrokiewicz, a broker with AA Premier Realty, Ltd., accompanied the Scotts. The Scotts offered slightly less than the owners' asking price for the rental house. Both Scott brothers and Petrokiewicz testified that after the Scotts made their offer, Simonoff asked them for certain background information. According to the Scotts, Jonathan responded to Simonoff's request for Jonathan's social security number by telling Simonoff he was not authorized to make a credit check, and Robert added that he also did not want his credit checked. Jonathan Scott claimed that Simonoff assured him that he would not run a credit check, and both brothers testified that they understood Simonoff would not check their credit. Petrokiewicz corroborated the brothers' account. However, Simonoff testified that he informed the brothers that the owner required a credit check and that one of the brothers merely requested "that if at all possible," the broker not run a credit check.
 
 
 3
 Simonoff claimed that he contacted the owners after meeting with the Scotts and conveyed the Scotts' offer along with another offer. The owners allegedly insisted on credit checks. Therefore, Simonoff asked Peter Visconti, a partner in former defendant Real Estate Finance Group ("REFG"), to check the Scotts' credit. According to Visconti, Simonoff claimed to have written authorizations from the Scotts, which plaintiffs say was not true. Visconti obtained reports on the Scotts by falsely representing to a computerized credit reporting service that he needed the reports to evaluate a mortgage application and then supplied the reports to Simonoff. After the Scotts learned from Petrokiewicz that Simonoff had obtained their credit reports, Robert Scott asked Simonoff for a copy of the report on Jonathan Scott, and Simonoff faxed him a copy.
 
 
 4
 On May 24, 1995, the Scotts filed a lawsuit against REFG, Gatewood, and Simonoff in the United States District Court for the Eastern District of New York. Plaintiffs alleged violations of both FCRA and NYFCRA. Gatewood and Simonoff and REFG answered, made cross-claims against each other, and filed third party complaints against Petrokiewicz and her brokerage. After discovery, the Scotts moved for partial summary judgment against all defendants for obtaining their credit reports under false pretenses in violation of both FCRA and NYFCRA and failing to give appropriate notice of their potential requests as required by NYFCRA. Gatewood and Simonoff cross-moved for summary judgement dismissing the complaint and for sanctions. The district court granted Simonoff and Gatewood's motion for summary judgment on all claims, dismissed plaintiffs' NYFCRA notice claim against REFG, entered partial summary judgment against REFG on the Scotts' FCRA and NYFCRA false pretenses claims, and denied defendants' requests for sanctions. See Scott, 956 F. Supp. at 386-87. Following the district court's ruling on the summary judgment motions, REFG and Gatewood and Simonoff withdrew their reciprocal cross-claims, the Scotts settled their claim against REFG, and the district court directed the clerk of the court to close the case. The Scotts then appealed the dismissal of their claims against Gatewood and Simonoff.
 
 DISCUSSION
 I. Standard
 
 5
 We review de novo the district court's grant of summary judgment "to determine whether the parties' submissions 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Ace Auto Body & Towing, Ltd. v. City of New York, 171 F.3d 765, 770 (2d Cir. 1999) (quoting Fed. R. Civ. P. 56(c)).
 
 II. The FCRA Claim
 
 6
 Plaintiffs claimed that Simonoff obtained their credit reports under false pretenses because he falsely represented to Visconti that the plaintiffs had given him written authorizations. Section 1681q of FCRA makes criminally liable "[a]ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses." 15 U.S.C. § 1681q. By virtue of 15 U.S.C. § 1681n, a consumer may also maintain a civil action against any "user of information" who "willfully" violates Section 1681q. See 15 U.S.C. § 1681(n)[1] ; see also Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41, 47 (2d. Cir. 1997) (Section1681n incorporates Section1681q). The district court -- relying largely on Advanced Conservation Sys., Inc. v. Long Island Lighting Co., 934 F. Supp. 53 (E.D.N.Y. 1996), aff'd 113 F.3d 1229 (2d Cir. 1997), and Baker v. Bronx-Westchester Investigations, Inc., 850 F. Supp. 260 (S.D.N.Y. 1994) -- found that Simonoff's misrepresentation did not violate Section 1681q. See Scott, 956 F. Supp. at 381-83. The court held that the pending lease transaction between the Scotts and Simonoff's clients constituted a permissible basis for requesting a credit report pursuant to 15 U.S.C. § 1681b. See id. at 382. Because Simonoff had a legitimate - albeit unstated - reason for requesting the report, the district court found he did not obtain the report under false pretenses and thus did not violate Section 1681q. See id. at 383.
 
 
 7
 On appeal, the Scotts argue that the district court erred both in its legal conclusion and in its finding that the Scotts had a pending business transaction with the home owners. We agree with the district court that a report requester does not violate Section 1681q by giving a false reason for its request if it has an independent legitimate basis for requesting the report. Section 1681q punishes a person who "obtains information . . . under false pretenses." However, a credit reporting agency can give credit information to an entity it reasonably believes has "a legitimate business need" for the information "in connection with a business transaction involving the consumer." 15 U.S.C. § 1681b(3)(E) (pre- 1996 amendments version). A person cannot obtain information to which he has a right under false pretenses. See Baker, 850 F. Supp. at 264; cf. Zamora v. Valley Federal Savings & Loan Assoc. of Grand Junction, 811 F.2d 1368, 1370 (10th Cir. 1987) (requester violates the Act if it obtains a report for impermissible purposes while representing that the report is sought for permissible purposes); Advanced Conservation Sys., 934 F. Supp at 54 (stating "where a permissible purpose underlies the request for a consumer report, the report cannot have been obtained under false pretenses"). Therefore, if the parties had a pending business transaction for which the credit report was a legitimate business need, Simonoff did not violate Section 1681q.
 
 
 8
 However, we believe that the district court overlooked issues of fact on the legitimacy of Simonoff's business need for the report at the time he requested it. A finder of fact who credited the Scotts' testimony could find that they conditioned their offer to rent on the owner's willingness to forego a credit check. If so, Simonoff knew that there was no longer a pending transaction between his clients and the Scotts as soon as his clients insisted on the credit report. Put in slightly different terms, we find that parties to a transaction may elect to structure their negotiations in such a way that those negotiations - no matter how apparently detailed - constitute expressions of interest that are too inchoate to give the landlord a "legitimate business need for the information in connection with a business transaction involving the consumer" within the meaning of Section 1681b(3)(E) (pre-1996 amendments version). While every case will turn on its facts, an offer to enter a lease can constitute this type of structured negotiation when it is made with the express condition that no credit check will be conducted. In essence, the parties are free to contractually define whether or not a "legitimate business need" exists "in connection with a business transaction." In turn, when a factual dispute exists as to whether the negotiations were structured in such a way, a factual dispute necessarily exists as to whether the requesting party had a legitimate need for the credit report. Because a fact finder must determine whether Simonoff had a legitimate need for the report when he requested it - and, if not, whether his non-compliance with the statute was willful - we reverse and remand for fact finding.
 
 II. The New York Claims
 
 9
 The Scotts alleged that Gatewood and Simonoff violated NYFCRA in two ways: (1) by obtaining their credit reports through the use of false pretenses and (2) by failing to give them the notice required by N.Y. Gen. Bus. L. § 380-b(b). The New York statutes relevant to a false pretenses claim contain language similar to that of the parallel federal provisions.[2] Compare 15 U.S.C. §§ 1681b(3), 1681q (pre-1996 amendments version) with N.Y. Gen. Bus. L. §§ 380-b(a)(3), 380-o. Therefore, we agree with the district court that the two statutes must be construed in the same way. However, because we find issues of fact relevant to determining the federal claim, we also find issues of fact on the parallel state claim and reverse the district court's dismissal of this claim.
 
 
 10
 The Scott's second state claim rests on Section 380-b(b) of NYFCRA, which forbids anyone from requesting a consumer report
 
 
 11
 unless the applicant is first informed in writing or in the same manner in which the application is made that (i) a consumer report may be requested in connection with such application, and (ii) the applicant upon request will be informed whether or not a consumer report was requested, and if such report was requested, informed of the name and address of the consumer reporting agency that furnished the report.
 
 
 12
 N.Y. Gen. Bus. L. § 380-b(b) (emphasis added). The district court found that Simonoff complied with Section 380-b(b)(i) by telling the Scotts that a credit report might be necessary[3] and complied with Section 380-b(b)(ii) by sending them a copy of the report. See Scott, 956 F. Supp. at 385. However, both the Scotts and Petrokiewicz insisted that Simonoff assured the Scotts that he would not obtain their credit reports. This testimony creates an issue of fact on notice contrary to the district court's finding that plaintiffs conceded that they received proper notice under Section 380-b(b)(i). See id. Moreover, the district court incorrectly held that Simonoff's after-the-fact transmission of copies of the credit reports satisfied subdivision (ii) of Section 380-b(b). This section clearly requires that the notice set forth in both its subdivisions be given before a credit report is requested. Post-request receipt of a copy of a credit report does not excuse pre-request failure to give the notice required by Section 380-b(b)(ii). Because Simonoff offered no proof that he advised the Scotts of their Section 381-b(b)(ii) notice rights prior to requesting their credit reports, the Scotts are entitled to partial summary judgment on this claim.
 
 CONCLUSION
 
 13
 For the reasons discussed, we affirm the district court's refusal to grant summary judgment to the plaintiffs on their FCRA claims and on their NYFCRA false pretenses claims. We reverse the district court's grant of summary judgment to defendants in its entirety. We also direct the district court to enter summary judgment in favor of the Scotts on that portion of their Section 380-b(b) claim that complains of Simonoff's failure to notify them of their rights pursuant to Section 380-b(b)(ii) prior to requesting a credit report.
 
 
 
 Notes:
 
 
 [1]
 Without objection, Judge Spatt addressed the FCRA claim under the Act as it existed prior to various 1996 amendments. Accordingly, throughout this opinion we quote or cite the pre-1996 amendments version of the Act.
 
 
 [2]
 However, the state statute also specifically lists the rental or lease of a residence as a legitimate business purpose. See N.Y.Gen. Bus. L. § 380-b(a)(3).
 
 
 [3]
 The district court also relied on the computer listing for the house which stated that credit reports were required. See Scott, 956 F. Supp. at 385. However, we find no basis in the record for assuming that the Scotts ever saw this listing.