**IT IS FINALLY ORDERED** that defendant United States Fidelity and Guaranty Company's Motion for Summary Judgment is **GRANTED.** [Doc. 57]

An appropriate Judgment shall accompany this Memorandum and Order.

### *JUDGMENT*

In accordance with the Memorandum and Order filed this date and incorporated herein,

**IT IS HEREBY ORDERED, AD-JUDGED, AND DECREED** that defendants Cincinnati Insurance Company and United States Fidelity and Guaranty Company shall have judgment against plaintiff, Jerome Group, Incorporated.

**Susan R. UHLIG, Plaintiff,**

v.

**BERGE FORD, INC., an Arizona corporation, Defendant.**

**No. 02–CV–2264PHX(HRH).**

United States District Court, D. Arizona.

April 15, 2003.

Hyung Sik Choi, Choi Rhee & Fabian PLC, Tempe, AZ, Mitchell D Gliner, Las Vegas, NV, for Susan R Uhlig, pla.

Donald Peder Johnsen, Gallagher & Kennedy PA, Phoenix, AZ, for Berge Ford Inc, an Arizona corporation, dft.

## ORDER

HOLLAND, District Judge.

*Cross–Motions for Summary Judgment*

Defendant moves for summary judgment.[1] This motion is opposed, and plaintiff cross-moves for summary judgment.[2] Plaintiff's cross-motion for summary judgment is opposed.[3] Oral argument was requested and has been heard.

## Facts

Plaintiff Susan R. Uhlig purchased a 2001 Ford Windstar from defendant Berge Ford, Inc., on February 4, 2001. The total purchase price of the Windstar, including taxes and fees, was $28,700.00. Plaintiff was given $6000.00 for her trade-in and assigned a $1,000.00 "customer cash incentive" to defendant toward the purchase price of the Windstar. Plaintiff paid the balance of $21,700.00 with a personal check.

During the sales transaction, plaintiff was asked to sign a credit application which included a provision that would authorize defendant to acquire plaintiff's credit profile. Plaintiff indicated that she did not require financing, and she twice refused to sign the credit application. Plaintiff avers that she "indicated that any transaction with Berge Ford would be made with the condition that no credit check would be conducted."[4] Plaintiff further avers that the salesperson, Terry Syverson, "acknowledged the condition and proceeded with completing the transaction."[5] Mr. Syverson avers that he does not recall plaintiff stating that any transaction with defendant would be made only on the condition that no credit check be conducted.[6] Mr. Syverson further avers that he does not recall acknowledging such a condition.[7]

Plaintiff took possession of her new Ford Windstar on February 4, 2001, the same day she tendered her check for partial payment of the vehicle.[8] Plaintiff's personal check cleared on February 6, 2001.[9] Plaintiff's certificate of title for the Ford Windstar was issued on February 22, 2001.[10]

1. Clerk's Docket No. 9.

2. Clerk's Docket No. 15.

3. Clerk's Docket No. 19.

4. Affidavit of Suzan R. Uhlig at 1, ¶ 10, attached as Exhibit A to Plaintiff's Statement of Facts, Clerk's Docket No. 16.

5. *Id.* at 2, ¶ 11.

6. Affidavit of Terry Syverson at 1, ¶ 3, attached as Exhibit A to Defendant's Controverting Statement of Facts, Clerk's Docket No. 20.

7. *Id.* at ¶ 4.

8. Affidavit of Suzan R. Uhlig at 1, ¶ 4, attached to Notice of Submitting Affidavit, Clerk's Docket No. 23.

9. *Id.* at ¶ 5.

10. *Id.* at ¶ 6.

On May 12, 2001, plaintiff obtained a copy of her Trans Union credit profile which indicated that Berge Ford had initiated a credit inquiry on February 4, 2001. Plaintiff subsequently filed suit in this court alleging that defendant violated sections 1681b(f), 1681n, and 1681o of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681–1681u. Defendant now moves for summary judgment that it did not violate the FCRA, and plaintiff cross-moves for summary judgment that defendant did violate the FCRA.

### Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. *Id.* at 255, 106 S.Ct. 2505. When, as here, the court is faced with cross-motions for summary judgment, the court must consider each motion on its own merit. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir.2001). "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir.1987).

As an initial matter, some clarification of the claims being asserted by plaintiff is required. Plaintiff alleges that defendant violated sections 1681b(f), 1681n, and 1681o of the FCRA. However, sections 1681n and 1681o are not sections of the FCRA that can be violated. Section 1681n creates civil liability for willful noncompliance with any of the requirements of the act, and section 1681o creates civil liability for negligent noncompliance. The court assumes plaintiff's intent in referring to these sections was to invoke the court's jurisdiction.

There is also some question as to whether plaintiff has pleaded a "false pretenses" claim. Plaintiff devotes a great deal of her briefing to explaining how the civil liability sections of the FCRA, sections 1681n and 1681o, are tied to the criminal liability section, 15 U.S.C. § 1681q. Section 1681q makes "[a]ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses" criminally liable. "By virtue of 15 U.S.C. § 1681n, a consumer may also maintain a civil action against any 'user of information' who 'willfully' violates Section 1681q." *Scott v. Real Estate Finance Group*, 183 F.3d 97, 99 (2d Cir.1999) (quoting 15 U.S.C. § 1681n).

Plaintiff has not pleaded a "false pretenses" claim. Her complaint makes reference to defendant's corporate policy violating section 1681q, but she does not allege that when defendant obtained her credit report it did so under false pretenses.

Thus, plaintiff's sole claim is that defendant violated section 1681b(f) of the FCRA. Section 1681b(f) provides that:

[a] person shall not use or obtain a consumer report for any purpose unless—

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

The dispute here centers on whether defendant obtained plaintiff's credit report for an authorized purpose. The permissible or authorized purposes for which a person may request a credit report are found in section 1681b(a) of the FCRA. Defendant argues that its request for plaintiff's credit report was authorized under sections 1681b(a)(3)(A) and (F).

Section 1681b(a)(3)(A) provides that a consumer report may be obtained by a person who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished...." Although plaintiff tendered a check to purchase her vehicle, "a check itself is, essentially, an instrument of credit." *Greenway v. Information Dynamics, Ltd.*, 524 F.2d 1145, 1146 (9th Cir.1975) (footnote omitted). Thus, defendant argues that it did not violate the FCRA when it requested plaintiff's credit report because it intended to use the information in connection with a "credit transaction" involving plaintiff.

Section 1681b(a)(3)(F)(i) provides that a consumer report can be obtained by a person who "has a legitimate business need for the information in connection with a business transaction that is initiated by the consumer[.]" Defendant argues that a customer's tender of a personal check can give rise to a "legitimate business need" to request a credit report. Defendant points out that the Federal Trade Commission

(FTC) has interpreted a "legitimate business need" to include situations when a consumer "offers to pay for goods with a check...." 16 C.F.R. pt. 600, app. Defendant also offers two letter opinions by the FTC in which the FTC stated that it was permissible for an auto dealer to obtain a credit report on a consumer who offers to pay for a vehicle with a personal check.[11] Finally, defendant cites *Estiverne v. Sak's Fifth Avenue*, 9 F.3d 1171 (5th Cir.1993), in which the court held "that Sak's obtaining of this [credit] report for the purpose of deciding whether to accept or reject a check in payment is a 'legitimate business need.'" *Id.* at 1173.

Plaintiff concedes that, based on the authority presented by defendant, it would be permissible to obtain a credit report when a consumer offers to pay for goods with a check. What she disputes is whether there was a permissible purpose under the facts of this case. Plaintiff argues that in this instance there was no legitimate business purpose because she had conditioned her offer to purchase on defendant's willingness to forego a credit check. Plaintiff argues that once defendant agreed not to access her credit history, defendant had no permissible purpose to do so. Plaintiff's sole support for her argument is *Scott v. Real Estate Finance Group*, 183 F.3d 97 (2d Cir.1999).

In *Scott*, the plaintiffs made an offer to rent a house. The plaintiffs testified that they told the broker who was showing the house for the owner that they did not want their credit checked and that the broker assured them he would not do so. The broker testified that he told the plaintiffs the owner would require a credit check. The broker further testified that when he

---

11. *See* Letter from Clarke W. Brinckerhoff, FTC, to Charlie Kaiser (July 16, 1998) and Letter from David Medine, FTC, to Karen Coffey (Feb. 11, 1998), attached as Exhibit D and Exhibit E, respectively, to Defendant's Opposition to Motion to Amend Complaint, Clerk's Docket No. 11.

contacted the owner, the owner insisted on credit checks being done. The broker asked a third party to obtain the credit reports on the plaintiffs, claiming that he had written authorizations from the plaintiffs to do so. After discovering that credit checks had been done, the plaintiffs brought suit against the broker and others alleging that they had violated section 1681q of the FCRA by obtaining credit reports under false pretenses. The plaintiffs' argument was based on the broker's misrepresentation that he had written authorization from the plaintiffs to obtain credit reports.

The Second Circuit began its analysis by observing that "a report requester does not violate Section 1681q by giving a false reason for its request if it has an independent legitimate basis for requesting the report." *Id.* at 99. The district court had found that the broker had an independent basis for requesting the report, namely the pending lease transaction which qualified as a "legitimate business need."

The appellate court held that there were questions of fact as to the legitimacy of the need for the report. The court stated that a finder of fact who credited the plaintiffs' testimony could find that their offer to rent was conditioned on the owner's willingness to forego a credit check. If that were the case, then, once the broker knew the owner was insisting on credit checks, he also knew there was no longer a pending business transaction. The court found that:

> parties to a transaction may elect to structure their negotiations in such a way that those negotiations—no matter how apparently detailed—constitute expressions of interest that are too inchoate to give the landlord a "legitimate business need for the information in connection with a business transaction involving the consumer" within the mean-

ing of Section 1681b(3)(E) [now 1681a(3)(F)].

*Id.* at 100. In short, the court concluded that "the parties are free to contractually define whether or not a 'legitimate business need' exists 'in connection with a business transaction.'" *Id.*

Plaintiff argues that is exactly what happened here. She conditioned her purchase of the vehicle on defendant not obtaining a credit report, a condition to which defendant allegedly agreed. When defendant obtained a credit report anyway, it could not have had any permissible purpose to do so, and if defendant obtained a credit report without a permissible purpose, it violated the FCRA, in plaintiff's view.

Defendant first argues that plaintiff's assertion that she bought the vehicle only on the condition that defendant not obtain a credit report is meaningless because defendant was not required to obtain her permission to request a credit report. Defendant argues that a credit report can be obtained under either of the two subsections on which it relies, regardless of whether the consumer authorizes a credit check. For support, defendant cites *Baker v. Bronx–Westchester Investigations, Inc.*, 850 F.Supp. 260, 264 (S.D.N.Y.1994), in which the court noted that the plaintiff's authorization was not necessary in order for the defendants to obtain a credit report as long as the report was obtained for a permissible purpose. The FTC has also interpreted section 1681b as allowing parties to obtain credit reports without the consumer's permission or over their objections, as long as the report is being obtained for a permissible purpose. 16 C.F.R. pt. 600, app. Defendant insists that the consumer cannot trump the merchant's statutory right to request a credit report without authorization or over the consumer's objections by claiming that the parties have entered into a separate agree-

ment not to request a report. Defendant insists that whether plaintiff conditioned the purchase of the vehicle on defendant not requesting a credit check is immaterial because the FCRA explicitly authorized defendant to request a credit check since plaintiff was paying for the vehicle with a personal check.

This argument misses the point. Plaintiff is not arguing that defendant needed her permission to obtain her credit report or that it obtained the report over her objections. Plaintiff states that she agrees with the legal proposition asserted by defendant: that a merchant presented with a check—without more—can access a credit report without consent or even over protest.[12] However, plaintiff argues, there is more here. In this case, it is argued and there is evidence that there was an express agreement between plaintiff and defendant that defendant had no legitimate need to obtain her credit report and would not do so, but defendant then obtained a credit report anyway. The serious question presented by these motions is whether or not an agreement that a credit report will not be obtained to support a credit transaction is enforceable.

Defendant also argues that *Scott* is not applicable here. Defendant emphasizes that *Scott* involved only the "legitimate business need" purpose, and that it did not involve the other stated purpose involved in this case, that under section 1681b(a)(3)(A). Defendant also points out that the plaintiffs in *Scott* had not tendered a personal check in payment for the lease so the court did not have an opportunity to consider whether the broker could have requested a credit report pursuant to section 1681b(a)(3)(A). Nor did the court in *Scott* have the opportunity to consider whether the tendering of a check might

give rise to a "legitimate business need" for a credit report.

Defendant is correct that there are factual differences between this case and *Scott.* The only permissive purpose being asserted by the broker in *Scott* was that he had a legitimate business need to request a report. Here, defendant contends that it could request a credit check not only because it had a legitimate business need, but also because there was a "credit transaction" involved. These differences lack any significant distinction. If parties can contractually agree to what a "legitimate business need" is, the court perceives no reason why they could not contractually agree as to whether any other purpose stated in section 1681b(a)(3) is permissible.

■ Defendant accuses plaintiff of asking the court to read an "authorization" requirement into section 1681b(a)(3), *i.e.,* a merchant can obtain a credit report for a credit transaction or other legitimate business need, but only as long as the consumer agrees. Not so. Plaintiff is not asking the court to read into the statute a requirement that a merchant needs a consumer's authorization to obtain a credit report. Rather, she is asking the court to decide whether the parties can contractually agree that there is no permissible purpose for obtaining a credit report. The court concludes that they can do so, but this leaves the unanswered question of what the agreement between the parties was.

■ Plaintiff avers there was an agreement between her and defendant not to obtain a credit report. Mr. Syverson avers that he does not recall plaintiff conditioning the purchase of the vehicle on there not being a credit check or that he

---

**12.** Reply in Support of Plaintiff's Cross–Motion for Summary Judgment at 4, Clerk's

Docket No. 21.

acknowledged such a condition. Plaintiff argues that Mr. Syverson's affidavit does not present the kind of "specific facts" necessary to defeat a motion for summary judgment.

Mr. Syverson's affidavit is sufficient to create a genuine issue of material fact. Syverson stated that he did not recall plaintiff making the statement that the sale had to be conditioned on there being no credit report, and that he did not recall acknowledging such a condition. That does not necessarily mean he does not remember the transaction, as plaintiff suggests. It could mean that he does not remember the condition or the acknowledgment thereof because these events did not happen.

### Conclusion

Defendant's motion for summary judgment [13] is denied on the law as stated above. Plaintiff's cross-motion for summary judgment [14] is denied because there are material facts in dispute.

---

**13.** Clerk's Docket No. 9.

**14.** Clerk's Docket No. 15.