914 F.Supp. 328 (1996)
Mark DOTZLER, Plaintiff,
v.
Ross PEROT, et al., Defendants.
Kevin LAUGHLIN, et al., Plaintiffs
v.
Ross PEROT, et al., Defendants.
Nos. 4:94CV00887 GFG, 4:94CV00888 GFG.
United States District Court, E.D. Missouri, Eastern Division.
February 6, 1996.
Mark Dotzler, St. Louis, MO, pro se.
Stephen M. Schoenbeck, Schoenbeck and Schoenbeck, St. Louis, MO, F. John Reeks, Jr., David A. Szwak, Bodenheimer and Jones, Shreveport, LA, for Kevin Laughlin, Edward Dyck and Carrie Alspaw, and Kevin Laughlin, Maryland Heights, MO, Edward Dyck, Chesterfield, MO, and Carrie Alspaw, St. Charles, MO, pro se.
Frank N. Gundlach, Armstrong and Teasdale, St. Louis, MO, Craig W. Budner, and Kim J. Askew, Hughes and Luce, Dallas, TX, for Ross Perot, the Perot Petition Committee, Mark Alan Blahnik and Russ Melbye.
W. Dennis Cross and David S. Ladwig, Morrison and Hecker, Kansas City, MO, for the Calahan & Gibbons Group.
Alene V. Haskell, Husch and Eppenberger, St. Louis, MO and Lisa A. Kainec, Millisor and Nobil, Cleveland, OH, for U.S. Datalink, Inc.
G. Carroll Stribling, Jr., Ziercher and Hocker, St. Louis, MO, for Equifax Credit Information Services.
Daniel T. Rabbitt, Jr., Rabbitt and Pitzer, St. Louis, MO and Jerome R. Doak, Jones and Day, Dallas, TX, for TRW, Inc.
Alan C. Kohn, John W. Lemkemeier, Kohn and Shands, St. Louis, MO, and Rebecca S. Stith, St. Louis, MO, for Sandra Stone McClure.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on the motions of defendants U.S. Datalink, Inc. and *329 TRW, Inc. for summary judgment. For the reasons set forth below, the motions are granted.
Mark Dotzler, Kevin Laughlin, Edward Dyck and Carrie Alspaw filed separate pro se complaints against defendants Ross Perot,[1] the Perot Petition Committee (PPC), Mark Alan Blahnik, the Callahan & Gibbons Group (C & G),[2] U.S. Datalink, Inc. (Datalink), Equifax Credit Information Services, Inc., TRW, Inc. (TRW), Russ Melbye and Sandra Stone McClure. Dotzler's complaint was filed as No. 4:94CV00887 GFG. The complaint filed by Laughlin, Alspaw and Dyck was assigned No. 4:94CV00888 CAS. This Court consolidated the two actions in the Order of November 16, 1994.
According to the complaints in relevant part, Laughlin, with the support of Perot's representatives in Dallas, organized a group called "Missouri for Perot" to circulate petitions in order to place Perot's name on the 1992 presidential ballet as an independent candidate. Laughlin, Dyck and Dotzler developed a "Petition Pak," which contained biographical information about Perot, to distribute in Missouri and began to circulate petitions in the state.
In their complaints plaintiffs allege that Blahnik, acting as Perot's agent, hired C & G in April or May of 1992 to assist with the "security" of the petition drive. C & G investigated plaintiffs and allegedly was paid by Perot through the PPC. Plaintiffs claim C & G conducted inquiries into their consumer credit files and obtained information on Dyck and Dotzler from TRW and Datalink on May 5, 1992 after requesting 102 searches[3] be completed on them. The requests containing each plaintiffs' first and last name, street address, city, state and zip code, were sent to Datalink via computer and printed out on paper. Plaintiffs also contend that Datalink furnished consumer reports to C & G without maintaining reasonable procedures designed to limit the furnishing of such consumer reports for the specifically enumerated purpose in the Fair Credit Reporting Act (FCRA).
Datalink provides access to public record repositories and proprietary databases to third party subscribers through an electronic gateway via computer software. Datalink entered into a Service Agreement with C & G by which C & G gained access to Datalink's database network via Datalink's computer software. The FCRA requires consumer reporting agencies to "maintain reasonable procedures designed to ... limit the furnishing of consumer reports to the [permissible] purposes listed under 1681b of this title." 15 U.S.C. § 1681e.
Plaintiffs in their affidavits state that they were not applying for credit, seeking employment or any license, or engaging in any business relationship with C & G, PPC, Ross Perot or any of their agents or affiliated agencies. Plaintiffs' only relationship with the PPC or Perot was in the capacity as volunteers and electors campaigning for Perot's placement of the 1992 Presidential ballot in Missouri.
The complaints allege that Datalink (Counts VI and VII, Dotzler complaint and Counts VI and VII, Laughlin complaint) and TRW (Counts IV and V, Dotzler complaint and Counts IV and V, Laughlin complaint) violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681a-1681t, by providing a consumer credit report to Datalink without a permissible purpose and by failing to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes enumerated in the FCRA, 15 U.S.C. § 1681b. In particular, plaintiffs allege that Datalink and TRW are subject to civil liability for negligent noncompliance with the requirements of FCRA.
*330 Datalink and TRW have moved for summary judgment contending that the information provided was not a consumer report or consumer credit information as defined by the FCRA. Datalink and TRW assert that TRW provided Datalink with an address update which contained only limited identifying information such as a person's name, social security number, date of birth, spouse's name and the date the address was reported to TRW. The address updates of Dotzler and Dyck were more limited inasmuch as the updates contained their names, addresses and social security numbers.
The Court notes that plaintiffs Laughlin and Alspaw have not asserted any claims against TRW nor has Alspaw asserted any claims against Datalink. Accordingly, the Court will not address plaintiffs' contention raised in their supplemental opposition to the motions for summary judgment of TRW and Datalink inasmuch as the report on Alspaw is the only report containing employment information. Although Dotzler has not filed any opposition to either of the summary judgment motions, the Court will assume that he adopted the memorandums in opposition filed by the other plaintiffs.
Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and his entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c).
Once the moving party has met his burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Anderson, 477 U.S. at 257, 106 S.Ct. at 2514; City of Mt. Pleasant v. Associated Elec. Coop., Inc., 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
15 U.S.C. § 1681a(d) of the Fair Credit Reporting Act defines a consumer report as
any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used ... as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes....
TRW supplied Datalink with an address update containing plaintiffs' names and current and former addresses as well as Dyck's social security information. This information did not bear on plaintiffs' credit or general character, nor was it used to establish their eligibility for credit, employment or any of the other purposes listed in the statute. The evidence indicating that Datalink used TRW's address update service to provide information to C & G fails to establish a violation of the FCRA. The information Datalink obtained through this service is not a consumer report within the meaning of FCRA. 15 U.S.C. § 1681a(d); see Hoke v. Retail Credit Corp. 521 F.2d 1079, 1081 (4th Cir.1975), cert. denied, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 98 (1976). The Court also notes that the information contained in the address update reports is readily available in public documents.
*331 In fact, in their affidavits in opposition to the summary judgment motions, plaintiffs state that they were not applying for credit, seeking employment, seeking insurance or any license or engaging in any business relationship with C & G. Consequently, plaintiffs admit that they cannot meet the first requirement of the definition of consumer report insofar as plaintiffs were not involved in any consumer transactions with defendants or other transactions related to credit, insurance, employment or any other enumerated purposes listed in the definition of consumer report under the FCRA. The Court therefore concludes that the address updates did not constitute consumer reports within the strictures of the FCRA.
Furthermore, the Federal Trade Commission (FTC), the agency empowered to administer and enforce the FCRA pursuant to 15 U.S.C. § 1681s(a), in its Commentary has specifically addressed this question and found as follows: "A report limited solely to the consumer's name and address alone, with no connotations as to credit worthiness or other characteristics, does not constitute a `consumer report,' if it does not bear on any of the seven factors." FTC Commentary to the FCRA, 16 C.F.R. § 600 App. at 379-80 (1995). Accordingly, the FCRA does not cover the procuring of information about individuals not involved in consumer transactions.
There is no dispute that the address updates do not contain any connotations bearing on the credit worthiness of the plaintiffs. Although plaintiffs question the weight to be given to the FTC Commentary noting that the commentary does not have the force or effect of law, the Supreme Court has stated that when Congress has not addressed the precise issue,
the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (footnote omitted). The Court further explained that an agency's interpretation of a statute it is entrusted to administer should be given considerable weight and should not be disturbed unless it appears from the statute or legislative history that Congress intended otherwise. Id.
The cases cited in support of their opposition to the summary judgment motions are inapposite inasmuch as those cases met the threshold requirement of a consumer report as the information obtained in those cases related to one of the seven characteristics outlined in 15 U.S.C. § 1681a(d), the definition of consumer report. Accordingly, plaintiffs have failed to establish that Datalink's use of TRW's address update service violated the FCRA.
Inasmuch as the information provided in the address updates has no bearing on the seven characteristics and therefore is not a consumer credit report, the Court will not address plaintiffs' claims that TRW's release of the information contained in the address updates violated either 15 U.S.C. § 1681b by negligently furnishing a consumer report with no permissible purpose as provided in the FCRA or 15 U.S.C. § 1681e by failing to maintain reasonable procedures designed to restrict the furnishing of consumer reports for the purposes listed in § 1681b.
NOTES
[1] In the Order of September 1, 1995, this Court granted Blahnik and Perot's motions to dismiss Dotzler's complaint and Laughlin, Dyck and Alspaw's complaint for lack of personal jurisdiction.
[2] In the Order of September 1, 1995, this Court granted the Callahan & Gibbons Group's motions to dismiss Dotzler's complaint and to dismiss Laughlin, Dyck and Alspaw's complaint for lack of personal jurisdiction.
[3] A 102 search is Datalink's internal code for a National Address Locator search, also known as an address update, a multi-database search.