**Andrew H. POPIK, Plaintiff,**

v.

**AMERICAN INTERNATIONAL MORTGAGE COMPANY and Alan Eisenberg, Defendants.**

**94 Civ. 2730 (MGC).**

United States District Court, S.D. New York.

Sept. 12, 1996.

Kucker Kraus & Bruh, by Saul D. Bruh, New York City, for Plaintiff.

Ronald M. Gutwirth, Orange, NJ, for Defendants.

CEDARBAUM, District Judge.

Andrew H. Popik sues Alan Eisenberg pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t (1994) ("FCRA"), for willfully obtaining a copy of Popik's consumer credit report under false pretenses in connection with the settlement of a landlord-tenant dispute. Both sides have moved pursuant to Fed.R.Civ.P. 56 for summary judgment. For the reasons that follow, both motions are denied.

### Undisputed Facts

I. *Eisenberg, American International Mortgage Company and Credit Lender Services Agency, Inc.*

Although the caption speaks of two defendants, up to 1991 Eisenberg was a mortgage banker who did business under the name American International Mortgage Company. On October 25, 1988, Eisenberg filed a certificate with the Clerk of Essex County, New Jersey which stated that he intended to conduct business as a mortgage banker under the name American International Mortgage Company. (Ex. H to Pl.'s Mot.) The New Jersey Department of Banking issued a mortgage banker license to American International effective July 1, 1989. (Ex. G to Pl.'s Mot.)

On September 26, 1989, American International entered into an agreement with Credit Lenders Service Agency, Inc. ("CLSA"), a consumer reporting agency. American International agreed that it would comply with all provisions of the FCRA and that it would request information only for permissible purposes, namely:

(A) In connection with a credit transaction involving the consumer on whom the information is to be furnished and in-

volving the extension of credit to, or review or collection of an account of, the consumer, or

(B) In connection with a business transaction involving the consumer, and the applicant agrees to identify to [CLSA] each request at the time such report is ordered, and to certify the legitimate business need for such report.

(Ex. N. to Pl.'s Mot.) Eisenberg testified at his deposition that CLSA never asked him for such identification when a request was made in connection with a business transaction or to certify the legitimate business need for such a report. (Ex. D to Pl.'s Mot. at 107.)

On March 11, 1991, Eisenberg returned the mortgage banker license to the New Jersey Department of Banking and informed the Department that he had ceased doing business as a mortgage banker in November of 1990. (Ex. C to Pl.'s Mot. ¶ 5; Ex. J to Pl.'s Mot.) On May 31, 1991, Eisenberg filed a "Certificate of Dissolution" with the Essex County Clerk declaring that he was no longer conducting business as a mortgage banker under the name American International Mortgage Company. (Ex. I to Pl.'s Mot.) Eisenberg never informed CLSA that he had ceased doing business as a mortgage banker or that he had returned the mortgage banker license to the New Jersey Department of Banking. (Ex. C to Pl.'s Mot. ¶¶ 21–22.)

## II. The landlord-tenant dispute between Popik and Eisenberg

In November of 1989, Popik purchased a building located at 229 West 71st Street in New York City. Eisenberg was a tenant in the building pursuant to a rent-stabilized lease, and after the purchase, Popik offered to "buy-out" his lease. This offer was never revoked. In December of 1992, Popik commenced a suit in Civil Court of the City of New York to recover possession of Eisenberg's apartment. On March 1, 1993, Eisenberg ordered a report on Popik from CLSA. (Ex. O to Pl.'s Mot.) At that time, Eisenberg had ceased doing business as a mortgage banker. He had given up his mortgage

banker license and had filed a certificate with the Essex County Clerk declaring that he was no longer operating under the name American International Mortgage Company.

Eisenberg alleges that he ordered the report because he desired "to learn the financial ability of Mr. Popik to make good on the offer that he made." (Eisenberg Aff. ¶ 55.) Eisenberg did not inform CLSA of the purpose for which he was requesting the report. On the basis of the information contained in Popik's report, Eisenberg accepted Popik's offer of $15,000 to vacate his apartment and settle the pending landlord-tenant dispute. (Id. ¶¶ 62–64.)

### Discussion

■■■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party opposing a properly supported summary judgment motion must establish a genuine issue of material fact in order to defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). In deciding whether a genuine issue exists, the court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *In re Chateaugay Corp.*, 10 F.3d 944, 957 (2d Cir.1993).

Eisenberg argues that because he obtained Popik's report for a commercial purpose, the FCRA does not apply. The FCRA defines a "consumer report" as:

any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, ... which is used or *expected to be used* or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title.

15 U.S.C. § 1681a(d) (emphasis added). If a consumer reporting agency provides a report based on the expectation that the report will be used for purposes permitted by the FCRA, then the report is a "consumer report" under the FCRA. The purpose for which the report is ultimately used is irrelevant to the question of whether the FCRA governs the report's use and the user's conduct. *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1274 (9th Cir.1990). It is undisputed that Eisenberg agreed that he would request information from CLSA only for purposes permitted by the FCRA. Since Eisenberg did not notify CLSA of the purpose for which he requested Popik's report, CLSA issued the report with the expectation that it would be used for a purpose permitted by the FCRA. Therefore, the report issued by CLSA to Eisenberg is a "consumer report" and his conduct is governed by the FCRA.

■ 15 U.S.C. § 1681n imposes civil liability on a user of credit information who willfully fails to comply with any requirement of the FCRA. 15 U.S.C. § 1681q makes it a crime knowingly and willfully to obtain information about a consumer from a consumer reporting agency under false pretenses. The criminal prohibition contained in section 1681q is a "requirement" within the meaning of section 1681n, and violation of section 1681q is a basis for a civil suit pursuant to section 1681n. *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir.1987); *Zamora v. Valley Fed. Sav. & Loan Ass'n of Grand Junction*, 811 F.2d 1368, 1370 (10th Cir.1987); *Kennedy v. Border City Sav. & Loan Ass'n*, 747 F.2d 367, 369 (6th Cir.1984); *Hansen v. Morgan*, 582 F.2d 1214, 1219 (9th Cir.1978); *Boothe v. TRW Credit Data*, 557 F.Supp. 66, 70–71 (S.D.N.Y.1982).

■ Whether a consumer report has been obtained under false pretenses will ordinarily be determined by reference to the permissible purposes for which consumer reports may be furnished by a consumer reporting agency. *Hansen*, 582 F.2d at 1219. 15 U.S.C. § 1681b provides, in relevant part, that "[a] consumer reporting agency may furnish a consumer report ... [t]o a person which it has reason to believe ... has a

legitimate business need for the information in connection with a business transaction involving the consumer." If a user certifies to a consumer reporting agency that it will only request consumer reports for permissible purposes and then requests information for an impermissible purpose without disclosing that fact to the agency, the user may be subject to civil liability for obtaining information under false pretenses. *Hansen*, 582 F.2d at 1219–20; *Boothe*, 557 F.Supp. at 71.

■ If a user had a permissible purpose to obtain a consumer report, then the user did not obtain the report under "false pretenses". *Matthews v. Worthen Bank & Trust Co.*, 741 F.2d 217, 219 (8th Cir.1984); *Baker v. Bronx–Westchester Investigations, Inc.*, 850 F.Supp. 260, 264 (S.D.N.Y.1994). At oral argument of the motion, I concluded that the purpose for which Eisenberg had requested Popik's consumer report—to determine Popik's ability to pay the proposed settlement—was not a legitimate business need within the meaning of section 1681b. (Tr. at 19, 21.)

■ The only remaining issue is whether Eisenberg intended to deceive CLSA when he failed to disclose the impermissible purpose for which he was requesting Popik's consumer report. Although malice or evil motive is not necessary to satisfy section 1681n, a "willful" violation is required. *Stevenson v. TRW Inc.*, 987 F.2d 288, 293–94 (5th Cir.1993); *Yohay*, 827 F.2d at 972 (evidence in the record supports jury's finding that defendant "consciously ignored" the rights of the plaintiff); *Graziano v. TRW, Inc.*, 877 F.Supp. 53, 57 (D.Mass.1995) (section 1681q requires "a calculated attempt to mislead another in order to obtain information").

■ Eisenberg admits that he had an obligation to identify those reports that were ordered in connection with a business transaction at the time the reports were ordered and to certify the legitimate business need for those reports. Nevertheless, Eisenberg argues that he did not identify the purpose for which he was requesting Popik's consumer report because CLSA had never asked him previously to certify the legitimate business need for such reports. Thus, Eisenberg argues, he did not intend to deceive CLSA when he requested Popik's consumer report

for an impermissible purpose. Eisenberg's intent is a disputed issue of material fact that precludes granting Popik's motion for summary judgment. *See Comeaux,* 915 F.2d at 1274 (only remaining genuine issue of material fact is whether defendant's noncompliance was willful); *cf. Yohay,* 827 F.2d at 970 (only factual issues presented to the jury were questions of willfulness and punitive damages); *Zamora,* 811 F.2d at 1369 (issue of whether defendant willfully and knowingly obtained consumer report under false pretenses presented to the jury); *Boothe,* 557 F.Supp. at 71 (after bench trial, court concludes that defendant's violation of section 1681q was willful).

## Conclusion

For the foregoing reasons, both Popik's and Eisenberg's motions for summary judgment are denied. The only remaining issues of material fact for trial are Eisenberg's intent and the amount of damages, if any.

SO ORDERED.