Freddie ALI and Ursilla Jitta, Plaintiffs,

v.

VIKAR MANAGEMENT LTD., John Ilibassi, and John Kucharczyk, Defendants.

Taramatee RAMSAROOP, Plaintiff,

v.

VIKAR MANAGEMENT LTD., John Ilibassi, and John Kucharczyk, Defendants.

Nos. 96 Civ. 1501(DC), 96 Civ. 7384(DC).

United States District Court, S.D. New York.

Feb. 19, 1998.

Fishman & Neil by James B. Fishman, New York City, for Plaintiffs.

Williamson & Williamson, P.C. by Kenneth Horwitz, New York City, for Defendants.

## OPINION

CHIN, District Judge.

The plaintiffs in these related cases are tenants in rent stabilized apartments. Their landlord suspected that they actually reside elsewhere. If that were true, the tenants would not be eligible to keep the rent stabilized apartments and the landlord could evict them.

Through its managing agent, the landlord obtained information about the tenants from a consumer credit reporting agency. The landlord sought this information not to check on the tenants' credit worthiness, but to verify their primary place of residence. For at least two of the tenants, the managing agent made false representations to obtain the information.

Plaintiffs Freddie Ali and Ursilla Jitta filed suit against defendants Vikar Management Ltd. ("Vikar"), the landlord's managing agent, and John Ilibassi and John Kucharczyk on March 1, 1996. On September 27, 1996, Taramatee Ramsaroop also filed suit against the same defendants.

Plaintiffs in both cases allege violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 et seq., New York's Fair Credit Reporting act (the "NYFCRA"), N.Y.Gen.Bus.L. § 380 et seq., and § 349 of New York's General Business Law concerning deceptive acts and practices. Plaintiffs claim that defendants improperly and illegally accessed and obtained credit and/or other information about them that was maintained by TRW Information Systems and Services ("TRW")[1], a credit reporting agency. TRW is not a party to this action.

The cases were consolidated and the parties cross-moved for summary judgment. Plaintiffs seek summary judgment on liability for the alleged violations of the FCRA and NYFCRA.[2] Defendants move for summary judgment for plaintiffs' failure to state a cause of action. I held oral argument in the case on February 10, 1998.

For the reasons set forth below, summary judgment on liability is granted in favor of Jitta because defendants obtained information about her from TRW under false pretenses. Summary judgment on liability is also granted in favor of Ramsaroop because defendants obtained her credit report under false pretenses as the credit report was not obtained for a permissible purpose under the FCRA: the FCRA does not permit a landlord to obtain a credit report for the purpose of determining a rent-stabilized tenant's primary residence. As to Ali, however, summary judgment on liability is denied, for issues of fact exist as to whether address information was obtained with respect to him under false pretenses. Defendants' motion for summary judgment is denied in all respects.

## BACKGROUND

Plaintiffs Ali and Jitta, husband and wife, are tenants of a rent-stabilized apartment located at 244 West 16th Street New York, New York (the "premises"). Only Ali, however, is a signatory to the lease, which was entered into on January 19, 1976. (Ali Aff. ¶¶ 3, 4). Plaintiff Ramsaroop is also a tenant at the premises and subject to New York's rent stabilization laws. Ramsaroop has been a tenant since entering into a lease on January 2, 1980. (Ramsaroop Aff. ¶¶ 2, 3).

---

1. After this action was filed, TRW's credit reporting division was apparently sold to a company by the name of Experian, Inc. (See Fishman Aff. at ¶ 3, n. 1). For simplicity, I refer only to TRW in this opinion.

2. Plaintiffs did not move for summary judgment on their cause of action under Section 349 of New York's General Business Law, which provides a private right of action for injuries to consumers resulting from deceptive practices. To make out a claim under this section, plaintiffs must show that: (1) defendants engaged in an act or practice that is deceptive or misleading in

a material way; (2) plaintiffs were injured by reason thereof; and (3) defendants' conduct has a broad impact on consumers at large. See, S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp., 84 F.3d 629, 636 (2d Cir.1996). Even though § 349 has been held to apply to landlord-tenant relations, see, e.g., Travieso v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., No. 94 Civ. 5756, 1995 WL 704778, at *7 (E.D.N.Y.1995), it is not clear as a matter of law whether defendants' conduct meets these requisites. Accordingly, I reserve decision on the validity of this cause of action.

The premises are owned by West 16th Realty Company ("West 16th"). (*See* Defs. Mem. at 2; Ali Aff. ¶ 3). West 16th engaged defendant Vikar Management, Ltd. ("Vikar") to provide certain managerial services. (Defs.Mem. at 2; Ilibassi Aff. ¶ 2). Defendant Ilibassi was an employee of Vikar as well as a partner of West 16th during the relevant time periods. (Ilibassi Aff. ¶¶ 2, 3). Defendant Kucharczyk was also an employee of Vikar during the time in question. (*See* Fishman Aff. Exh. A, TRW letter to James Fishman dated 3/14/95).

Vikar conducted a "monthly tenant check" for West 16th, which sometimes included accessing tenants' TRW information. (Ilibassi Aff. ¶ 3). As previously noted, TRW is a credit reporting agency that stores and reports consumer information. Vikar entered into a subscriber service agreement with TRW wherein Vikar "certifies and warrants that it will request and use credit information received from TRW solely in connection with credit transactions, or, if applicable, for employment purposes ... or for other 'permissible purposes' as defined by the Fair Credit Reporting Act, 15 U.S.C. Section 1681 *et seq.*" (Fishman Aff.Exh. B ¶ 4).

As West 16th's agent, Vikar accessed TRW information on Ali, Jitta, and Ramsaroop. (Ilibassi Aff. at ¶¶ 13, 14). On January 24, 1995, Vikar accessed "address information only" from TRW on Jitta. (Jitta Aff. ¶¶ 4, 5; Jitta Aff.Exh. A). On March 1, 1995 and again on March 2, 1995, Vikar accessed "address information only" from TRW on Ali. (Ali Aff. ¶¶ 4, 5; Ali Aff.Exh. B). Finally, on November 4, 1994, Vikar accessed Ramsaroop's credit report "for extension of credit, review or other permissible purpose." (Ramsaroop Aff.Exh. G).

On February 28, 1995, Fishman wrote to TRW requesting Vikar's specific purpose for accessing information on Jitta. (Fishman Aff.Exh. A, Fishman letter dated 2/28/95). On March 14, TRW responded to Fishman's inquiry. TRW stated that "John Kucharcqyk [sic] confirmed that an address inquiry was made on Ms. Jitta's report on 1/24/95." (Fishman Aff.Exh. A, TRW letter dated 3/14/95). Vikar's alleged reason for the inquiry was that it had "inadvertently received

Ms. Jitta's mail and ... wanted to be able to properly forward it to her." (Fishman Aff. Exh. A, TRW letter dated 3/15/95). TRW repeated this explanation to Fishman in letter dated November 28, 1995 (Fishman Aff. Exh. A, TRW letter dated 11/28/95) (explaining that John Ilibassi "stated that he utilized the address update when a piece of mail with Ms. Jitta's name was placed outside the mailboxes ... at 244 West 16th Street," and Vikar obtained her address to assist her in receiving her mail).

Fishman also corresponded with TRW concerning Vikar's inquiries on Ali. (Fishman Aff.Exh. A, Fishman letter dated 11/15/95, TRW letter dated 11/28/95, TRW letter 12/12/95, TRW letter 12/22/95). With respect to Ali, TRW never disclosed Vikar's reason for accessing information. Rather, TRW informed Fishman that its security department determined Vikar had a permissible purpose to do an address inquiry on him, and that any request for further information should be directed to Vikar. (Fishman Aff.Exh. A., TRW letter dated 12/22/95).

Fishman wrote to Ilibassi on December 20, 1995 requesting a written statement advising him of the specific reasons for their TRW inquiries on Jitta and Ali. (Fishman Aff.Exh. C). Ilibassi responded by writing the following at the end of Fishman's letter: "11/26/95—credit report was not obtained." (*Id.*). A December 26, 1995 demand by Fishman for clarification went unanswered. (*Id.*).

In the meantime, on September 25, 1995, West 16th notified Ali of its intent not to renew Ali's lease pursuant to sec. 2524.4(c) of New York's Rent Stabilization Code. West 16th filed a holdover petition against Ali claiming that he was not maintaining occupancy at West 16th as a primary residence—a claim based on information gained from Ali's TRW information. (Ali Aff.Exh. C, D, E). Apparently, West 16th later abandoned its efforts to evict Ali. (*See* Fishman Aff. ¶ 36, n. 3).

Ramsaroop's situation is similar, except that Vikar accessed her credit report, not merely address information. (*See* Fishman Aff.Exh. D, Fishman letter dated 7/18/96; TRW letter dated 7/25/96; Fishman letter

dated 9/27/96; TRW letter dated 10/10/96; Fishman letter dated 10/16/96; TRW letter dated 10/30/96; Fishman letter dated 11/4/96; TRW letter dated 11/15/96). In one of its letters to Fishman, TRW said that it contacted Vikar about Ramsaroop's credit report and Vikar stated that Ramsaroop was a "tenant in an apartment owned by Ilibassi Vikar," and that under the FCRA, such an inquiry can be made when a creditor has a legitimate business need for the credit report. (Fishman Aff.Exh. D, TRW letter dated 10/30/96). Vikar ignored Fishman's inquiries regarding Ramsaroop's credit report until it was ordered to respond by this Court. (Fishman Aff.Exh. E).

On September 22, 1995, West 16th notified Ramsaroop of its intent not to renew her lease pursuant to sec. 2524.4(c) of New York's Rent Stabilization Code. (Ramsaroop, Aff.Exh.B). West 16th filed a holdover petition against Ramsaroop claiming that Ramsaroop was not maintaining occupancy at West 16th as a primary residence—a claim based on information gained from Ramsaroop's credit report. (Ramsaroop Aff.Exh. B–F). Apparently, West 16th later abandoned its efforts to evict Ramsaroop. (See Fishman Aff. ¶ 36, n. 3).

After a March 14, 1997 conference with the Court, Vikar's attorney informed Fishman that the purpose of the TRW inquiries as to Ali, Jitta, and Ramsaroop was "in connection with the landlord/tenant relationship between the parties." (Fishman Aff. Exh. H, Horwitz letter dated 3/17/97). On March 18, 1997, he further explained that defendants' purpose for accessing the plaintiffs' TRW information was not for a credit purpose, but rather "to check on plaintiff's residence to determine the leasing and/or renewal leasing of the apartments at premises 244 W. 16th Street, New York, New York." (Fishman Aff.Exh. H, Horwitz letter dated 3/18/97; see also Ilibassi Aff. ¶ 12).

## DISCUSSION

### A. Motion for Summary Judgment Standard

The standards applicable to motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. See Fed. R.Civ.P. 56(c). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, id., 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Once the moving party meets its initial burden of production, the burden shifts to the nonmoving party to demonstrate that there exist genuine issues of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id., 475 U.S. at 586. There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. Anderson, 477 U.S. at 249. As the Supreme Court stated in Anderson, "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249–50 (citations omitted).

### B. The Fair Credit Reporting Act

The FCRA is a federal consumer protection statute enacted by Congress to establish credit reporting practices that protect the interest of the consumer in confidentiality, accuracy, relevancy, and proper utilization of consumer credit, personnel, insurance, and other information. See 15 U.S.C. § 1681 et. seq. One of the purposes of the FCRA is to protect an individual from the use of inaccurate or arbitrary information to determine the individual's eligibility for credit, insur-

ance, or employment. *See Podell v. Citicorp Diners Club, Inc.,* 859 F.Supp. 701, 704–05 (S.D.N.Y.1994).

Although the majority of the FCRA provisions govern the conduct of credit reporting agencies, the provisions invoked here are designed to check the conduct of parties requesting credit and other information from credit reporting agencies. There are two aspects of the FCRA at issue in this case: (1) using a consumer *report* for a permissible purpose pursuant to 15 U.S.C. § 1681b; and (2) obtaining consumer *information* under false pretenses as proscribed by 15 U.S.C. § 1681q.

### 1. *Permissible Purpose*

Under the FCRA, a "consumer report" communicates information bearing on a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living," which information is used, expected to be used, or collected for purposes of establishing the consumer's eligibility for credit, insurance, and employment, or for certain other limited purposes. 15 U.S.C. § 1681a(d)(1).

Consumer reports may be issued only if the credit reporting agency reasonably believes the report will be put to one of five (or, under the amended FCRA, six [3]) permissible purposes by the party requesting it. Under § 1681b, a consumer reporting agency has issued a consumer report for a permissible purpose if it, *inter alia,* reasonably believes that the party requesting the report "has a legitimate business need for the information in connection with a business transaction involving the consumer." 15 U.S.C. § 1681b(a)(3)(E).[4] The purpose for which the report is ultimately used is not relevant to the question of whether the report is a

"consumer report." *See Popik v. American Int'l Mortgage Co.,* 936 F.Supp. 173, 176 (S.D.N.Y.1996).

In contrast, no restriction is put on the use of information that is not a "consumer report" as defined by 15 U.S.C. § 1681a(d)(1). Address information on a consumer, for example, is not a consumer report because it is not information that bears on any of the characteristics described in 15 U.S.C. § 1681a(d)(1). The FCRA imposes no restrictions on the *purpose* for which such information is obtained. As discussed below, however, the FCRA does impose restrictions on the manner in which such information is obtained.

### 2. *False Pretenses*

Section 1681q of the FCRA prohibits accessing consumer information under false pretenses. It provides that:

> Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under Title 18, imprisoned for not more than 2 years, or both.[5]

Obtaining *any* information from a consumer reporting agency about a consumer under false pretenses subjects defendants to liability under § 1681q "even if the information supplied by the consumer reporting agency [is] not a consumer report." *Berman v. Parco,* 986 F.Supp. 195, 214 (S.D.N.Y. 1997) (citations omitted). Indeed, § 1681q does not refer to "consumer report" but only to "information" on a consumer.

Whether a "consumer report" has been obtained under false pretenses under § 1681q may be determined by reference to

---

**3.** *See infra* note 4.

**4.** 15 U.S.C. § 1681b(a) was amended in 1996, effective 365 days after Sept. 30, 1996. *See* Consumer Credit Reporting Reform Act of 1996, Pub.L. No. 104–208, § 2403, 110 Stat. 3009, 3009–430. The amendments revised the introductory portion of subsection (a), revised subsection (a)(3)(E), and added a new subsection (a)(3)(F). The amended version does not apply to the events in question in this action.

**5.** 15 U.S.C. § 1681q was also amended in 1996. The amended version of section 1681q substituted "fined under Title 18, imprisoned for not more than 2 years," for "fined not more than $5,000, or imprisoned not more than one year." Consumer Credit Reporting Reform Act of 1996, Pub.L. No. 104–208, Div. A, Title II, § 2415(a), 110 Stat. 3009, at 3009–450. The amendments in the Consumer Credit Reporting Reform Act are effective 365 days after Sept. 30, 1996 and, therefore, do not apply here.

the permissible purposes for which consumer reports may be furnished by a consumer reporting agency under § 1681b. *See Popik,* 936 F.Supp. at 176. Obtaining a consumer report for an impermissible purpose under the FCRA, without disclosing that impermissible purpose, constitutes obtaining the report under false pretenses. *See Baker v. Bronx–Westchester Investigations, Inc.,* 850 F.Supp. 260, 263–64 (S.D.N.Y.1994).

■ Section 1681n of the FCRA provides a cause of action against any consumer reporting agency or user who willfully fails to comply with any provision of the FCRA. The Second Circuit recently held that civil liability attaches under 15 U.S.C. § 1681n for violations of § 1681q. *See Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41, 47 (2d Cir. 1997) (holding that § 1681n incorporates § 1681q).[6]

## C. *New York Law*

Plaintiffs also allege related claims against defendants pursuant to NYFCRA, N.Y.Gen. Bus.L. § 380 *et seq.* Like the FCRA, the New York statute provides for criminal penalties against "any person who knowingly and wilfully obtains information concerning a consumer from a consumer reporting agency under false pretenses...." N.Y.Gen.Bus.L. § 380–*o.* Civil liability for wilful noncompliance arises under § 380–*l.* The permissible purposes for obtaining a credit report are set forth in § 380–b, which permits supplying credit report information "to a person in connection with a business transaction involving the consumer where the user has a legitimate business need for such information." N.Y.Gen.Bus.L. § 380–b(a)(3).

Generally, courts have interpreted the federal and New York statutes similarly. *See Scott v. Real Estate Finance Group, Era,* 956 F.Supp. 375, 384 (E.D.N.Y.1997), and cases cited therein. My conclusions as to the FCRA, therefore, also apply to New York's companion provisions.

## D. *Landlord/Tenant Relationship and FCRA*

Although this action is not directly related to West 16th's holdover petitions against Ali and Ramsaroop, New York law on rent stabilization is relevant to this case inasmuch as defendants claim that they accessed the information in question "in connection with the landlord/tenant relationship between the parties." (Fishman Aff.Exh. F, Horwitz letter dated 3/17/97). Defendants admitted that the purpose for accessing plaintiffs' TRW information was *not* for credit purposes, but rather "to determine the leasing and/or renewal leasing of the apartments at [West 16th]." (Fishman Aff.Exh. F, Horwitz letter dated 3/18/97).

The landlord-tenant relationship is one that may require a landlord to investigate a person's credit worthiness, as when a landlord obtains the credit report of a prospective tenant to determine if the prospective tenant will be able to meet rent obligations. *Scott,* 956 F.Supp. at 382–84. The Federal Trade Commission's Statements of General Policy or Interpretations on the FCRA are instructive on this point.[7] According to the Policy Statements, a legitimate business need for consumer credit information (as applied in § 1681b of the FCRA) includes obtaining a consumer report on a "consumer who applies

---

**6.** Some courts have also recognized a claim pursuant to 15 U.S.C. § 1681*o,* providing for a private right of action for negligent noncompliance with the Act. *See, e.g., Yohay v. City of Alexandria Employees Credit Union, Inc.,* 827 F.2d 967 (4th Cir.1987); *Hansen v. Morgan,* 582 F.2d 1214 (9th Cir.1978). Nonetheless, because § 1681q requires knowing and willful action for liability to attach, it appears that the appropriate section for civil liability based on § 1681q is § 1681n. In any event, I do not address or reach the question of whether a violation of § 1681*o* creates civil liability under § 1681q because I find that defendants' conduct in this matter was wilful and knowing.

**7.** The Statements of General Policy or Interpretations Under the Fair Credit Reporting Act, Subchapter F, 16 C.F.R. Part 600, App. (1997), do not constitute "trade regulation rules or regulations." 16 C.F.R. § 600.2(a). Nonetheless, courts have relied on them for authority. *See, e.g., Baker v. Bronx–Westchester Investigations, Inc.,* 850 F.Supp. 260, 262–63 (S.D.N.Y.1994) (granting defendants' summary judgment motion based in part on the FTC Statements of General Policy).

to rent an apartment...." 16 C.F.R. Part 600, App., § 604(3)(E), cl. 3. Other provisions in the Policy Statements intone similar propositions. (*See* Pls. Mem. at 15–17 for discussion of these other provisions). The provisions, however, all deal with *prospective* tenants.

*Scott* and the FTC Policy Statements, therefore, are not controlling. Indeed, it is undisputed by the parties that under New York law a landlord is required to renew a rent-stabilized tenant's lease without regard to the tenant's credit worthiness. (Pls. Mem. at 10–13; Defs.Mem. at 4). Hence, the credit worthiness of Ali, Jitta, and Ramsaroop was not a matter that defendants had any reason to explore.

### E. *The Motions for Summary Judgment*

#### 1. Ali and Jitta

Defendants accessed "address information only" from TRW on both Ali and Jitta. Defendants claim that this information was not subject to the FCRA because it was not a "credit report" as defined by the FCRA. FTC Policy and caselaw support this argument.

In *Dotzler v. Perot,* 914 F.Supp. 328 (E.D.Mo.1996), for example, the court held that address updates containing consumers' names, current addresses, former addresses, and (for some consumers) social security information was not a "credit report" within the meaning of the FCRA. The plaintiffs in this case were not applying for credit, seeking employment or any license, or engaging in any business relationship with the defendants. *Dotzler,* 914 F.Supp. at 329. Rather, the plaintiffs' only relationship with defendants was in their capacity as volunteers for the Ross Perot presidential campaign. *Id.* Nonetheless, the court held that because the address update information did not bear on any of the characteristics enumerated in the § 1681a(d)(1) definition of a consumer report, the information was not subject to FCRA strictures. *Id.* at 330–31.

The FTC addressed the question of address information in its Policy Statements and found as follows: "A report limited solely to the consumer's name and address alone,

with no connotations as to credit worthiness or other characteristics, does not constitute a 'consumer report,' if it does not bear on any of the seven factors [from § 1681a(d) ]." 16 C.F.R. Part 600, App., § 603(4)(F). Defendants cite an FTC staff letter that also supports this proposition. (*See* Defs. Reply Affirmation, Exh. A).

Based on the above, no reasonable jury could find that the address information accessed by defendants for Ali and Jitta was a consumer report. The inquiry does not end here, however, because plaintiffs allege that defendants violated section 1681q of the FCRA. That provision subjects defendants to liability under the act for obtaining *any* information from a consumer reporting agency under false pretenses even if the information is not a consumer report. *Berman,* 986 F.Supp. 195, 214 (citations omitted). The question, therefore, is whether defendants accessed Ali's and Jitta's TRW information under false pretenses.

 The record clearly reflects, and defendants have not proved otherwise, that Vikar lied to Fishman and TRW as to its reason for accessing Jitta's address information. Vikar falsely claimed that it accessed address information on Jitta in an effort to forward mail to her that was inadvertently received by Vikar. Defendants not only failed to provide any proof of such misplaced mailing in their papers, but admitted later that its sole reason for accessing information was based on its landlord-tenant relationship with Jitta and its desire "to determine leasing and/or renewal leasing" of apartments at West 16th.

Hence, defendants obtained information on Jitta under false pretenses and no reasonable jury could conclude otherwise. In so doing, defendants violated §§ 1681n and 1681q of the FCRA, as well as § 380–o and § 380–l of New York's General Business Law. Thus, plaintiffs' motion for summary judgment on liability is granted as to Jitta.

 In contrast to Jitta's situation, however, the record does not clearly reflect whether the information obtained on Ali was obtained under false pretenses. Indeed, it is not clear what representations, if any, were

made in accessing Ali's address information. Because the record does not clearly reflect the circumstances regarding Ali, a question of fact exists as to whether defendants accessed his address information under false pretenses. Accordingly, both parties' motions for summary judgment as to Ali are denied.

### 2. Ramsaroop

Defendants claim they had a legitimate business purpose, as that term is used in § 1681b(a)(3)(E) of the FCRA, for accessing Ramsaroop's credit report. No reasonable jury could reach that conclusion given the law and the facts of this case.

Ramsaroop's credit report was not issued for a credit, licensing, employment, or insurance purpose. Indeed, at oral argument, defendants' counsel relied on only two of the five permissible uses set out in § 1681b(a)(3), former subsections (D) and (E).

■ Subsection (D) concerns use of a consumer report "in connection with a determination of the consumer's eligibility for a license or other benefit granted by a government instrumentality...." This subsection has no applicability to this case and defendants' reliance on it is completely misplaced. Subsection (E) concerns using a credit report for a "legitimate business need." This subsection relates "only to those transactions in which there is a 'consumer relationship' between the requesting party and the subject of the report or in which the subject was seeking some benefit mentioned in the Act (credit insurance, employment, licensing) from the requesting party." *Boothe v. TRW Credit Data*, 557 F. Supp. 66, 70 (S.D.N.Y. 1982) (citation omitted). Because it is clear that Ramsaroop was not seeking some benefit mentioned in the FCRA, the only question is whether there was a consumer relationship between the parties. The undisputed facts in this case clearly demonstrate that the relationship between these parties was not a 'consumer relationship' because Ramsaroop's credit worthiness was not an issue.

■ Defendants claim that the mere presence of a landlord-tenant relationship permits a landlord to access a tenant's credit report. Even though there is support for the proposition that landlords do have legitimate business needs to access credit information on prospective tenants or for lease renewal purposes (*see, e.g.,* Defs. Reply Affirmation Exh. B), there is simply no support for the claim defendants make here because Ramsaroop was entitled to lease renewal without regard to her credit worthiness.

Vikar certified to TRW in its subscriber agreement that it would request and use credit information solely in connection with credit transactions or other "permissible purposes" as defined by the FCRA. Vikar further certified that it would request and use information from TRW solely in connection with transactions involving the consumer. Vikar clearly failed to abide by these certifications.

Defendants accessed Ramsaroop's credit report without having any credit purpose in so doing and without disclosing that fact. Thus, defendants acquired Ramsaroop's credit report under false pretenses and in clear violation of its subscriber agreement with TRW. *See Boothe,* 557 F.Supp. at 70.

Defendants violated §§ 1681n and 1681q of the FCRA, as well as § 380-*o* and § 380-*l* of New York's General Business Law, by accessing Ramsaroop's credit report and no reasonable jury could conclude otherwise.

### *CONCLUSION*

For the reasons stated herein, plaintiffs' motion for summary judgment is granted in part and denied in part, and defendants' motion is denied.

SO ORDERED.